UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMAN INVESTMENTS, LTD.,

    Plaintiff,

  v.

SHAH SAFARI, INC.,

    Defendant.

Case No. C10-0216RSL

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

## I. INTRODUCTION

    This matter comes before the Court on a motion for summary judgment filed by plaintiff Harman Investments, Ltd. ("Harman"). Harman alleges that it had a contract to deliver goods on behalf of defendant Shah Safari, Inc. ("Shah Safari"), it performed on that contract, but Shah Safari has refused to pay for the goods. Harman asserts a breach of contract claim under the common law and under Article 2 of the Uniform Commercial Code ("UCC"). Shah Safari denies that it had a contract with Harman and asserts that its role was limited to being a third party financier of the transaction. Although it did not

cross move, Shah Safari argues that in the absence of an issue of law or fact, the Court should *sua sponte* grant summary judgment in its favor.

For the reasons set forth below, the Court denies plaintiff's motion and grants summary judgment in defendant's favor.

## II.  DISCUSSION

**A.   Background Facts.**

Harman is a wholesale goods business that sells home textiles, kitchen linens, table top and bath products, and home decor items to retail buyers.  Declaration of Mani Bagga, (Dkt. #12) ("Bagga Decl.") at ¶ 3.  In the summer of 2009, Aisle 5 LLC ("Aisle 5") asked Harman to obtain bath accessory items for it to re-sell to the Kroger Company.  Because of Harman's previous license agreement with Aisle 5, it was aware that Aisle 5 lacked the assets to purchase the bath items discussed.  Id. at ¶ 6.  Harman conditioned the sale of the items on Aisle 5 providing an irrevocable letter of credit to secure payment for the goods.  Although Aisle 5 was unable to provide the letter of credit, it offered one from its partner, Shah Safari.

From mid-July to mid-September 2009, Harman sales manager Mani Bagga negotiated the details of the letter of credit with Rajnikant Shah, the CEO of Shah Safari.  On September 16, 2009, Wells Fargo Bank issued an irrevocable letter of credit to Shah Safari for the benefit of Harman to secure payment for the Kroger transaction.  Bagga Decl. at ¶ 9 & Ex. A; Declaration of Rajnikant Shah, (Dkt. #15) ("Shah Decl.") at ¶ 4 ("Shah Safari agreed to provide the letter of credit for the Kroger transaction . . . for a

ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT - 2

fee."). The letter of credit was subsequently amended twice. Bagga Decl., Exs. B & C.

On December 1, 2009, in the course of negotiating the final amendment to the letter of credit, Bagga noticed that it specified that the Port of Loading/Airport of Departure was "China or Taiwan." Bagga Decl. at ¶ 12. Although the goods were manufactured in China, they were consolidated domestically prior to shipment, "meaning that the invoice would not show the Port of Loading/Airport of Departure as 'China or Taiwan.'" Id. Mr. Bagga asked Mr. Shah to amend the term to note that the Port of Loading was Portland. In response, Mr. Shah promptly provided a letter on behalf of Shah Safari accepting the proposed change and noting that the discrepancy would "not affect the letter of credit in anyway. [sic]" Id., Ex. D; Shah Decl. at ¶ 8 ("Ultimately, at Mani Bagga's request, I confirmed by letter dated December 2, 2009, that the letter of credit would not be affected in any way by the fact that the goods were being consolidated domestically for shipment."). After receiving that confirmation, Harman delivered the goods to the Kroger warehouse in Clackamas, Oregon. Shah Safari did not inspect the goods. Shah Decl. at ¶ 10.

On December 17, 2009, Harman submitted documents regarding the Kroger transaction to Wells Fargo Bank and requested payment of $213,448.20 pursuant to the letter of credit. Bagga Decl. at ¶ 16. The next day, Wells Fargo Bank indicated its refusal to pay because of the discrepancy between the Port of Loading/Airport of Departure listed in the letter of credit and the "FOB Clackamas, Oregon" shown on the documents Harman submitted. Id. at ¶ 17. Because of that discrepancy and allegedly

ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT - 3

incomplete information on a bill of lading, Wells Fargo Bank has refused to pay upon the letter of credit. Shah Decl. at ¶ 12.

Aisle 5 discontinued business operation in February 2010. Shah Decl. at ¶ 14. In June 2010, it was placed involuntarily into a Chapter 7 bankruptcy proceeding in the Southern District of New York. Because of those proceedings, Harman has been unable to collect the money due under the contract from Aisle 5.

**B.    Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary

ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT - 4

judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C.  Analysis.**

Regardless of whether Harman had a contract with Aisle 5, this dispute turns on whether plaintiff had a contract with Shah Safari.  Harman, as the party claiming a breach, has the burden of proving the contract's existence.  See, e.g., Cahn v. Foster & Marshall, Inc., 33 Wn. App. 838, 840 (1983).  Under the UCC, a "contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  RCW 62A.2-204(1).  However, the UCC has not obviated the basic requirement of a meeting of the minds to form a contract.  See, e.g., Lakeside Pump & Equip., Inc. v. Austin Constr. Co., 89 Wn.2d 839 (1978).

Both of Harman's breach of contract claims are premised on the theory that Shah Safari was the buyer of the goods.  Harman contends that Shah Safari is liable because "the buyer must pay at the contract price for any goods accepted."  RCW 62A.2-607(1). The UCC defines a "buyer" as "a person who buys or contracts to buy goods."  RCW 62A.2-103.

In this case, none of the documents identifies Shah Safari as the purchaser or buyer.  In his declaration, Bagga artfully states, "Aisle 5 could not provide this Letter of Credit, but instead offered that Defendant Shah Safari, Inc., a partner of Aisle 5, would purchase the goods for the Kroger transaction on Aisle 5's behalf as Shah Safari, Inc.

ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT - 5

could provide the irrevocable Letter of Credit Harman required." Bagga Decl. at ¶ 7. Bagga's suggestion that Aisle 5 identified Shah Safari as the purchaser is unsupported by any specifics. In fact, it is undermined by e-mail communications from Harman's CEO that identified Shah Safari as "my third party LC financier" and "my partner who is issuing the LC." Shah Decl., Ex. A at pp. 191, 193. More fundamentally, Bagga's self serving declaration fails to show that Shah Safari agreed to act as a buyer. The documents and the evidence of the negotiations show that Shah Safari and Harman always contemplated that Shah Safari's role was as third party financier. In contrast to Harman's discussions with Aisle 5, Harman and Shah Safari did not negotiate for the sale of goods. Shah Decl. at ¶ 5 (explaining that Shah Safari did not negotiate the terms of purchase with Harman or the terms of re-sale to Kroger). Instead, all of their negotiations involved the terms of the letter of credit. Bagga Decl. at ¶¶ 9-16. If the parties had intended Shah Safari to be the buyer, rather than the financier, Shah Safari could have purchased the goods rather than securing the credit. The letter of credit is a financing instrument, not a contract for the sale of goods. As Harman notes, it sets forth the rights and obligations of the issuer (Wells Fargo), the beneficiary (Harman), and the applicant (Shah Safari). The fact that the letter of credit, specifically titled as such, included a list of the goods included in the Harman/Aisle 5 transaction does not transform it into a contract for the purchase of those goods.

 Furthermore, Shah Safari did not accept the goods, which only a buyer may do. RCW 62A.2-606(1) ("Acceptance of goods occurs when the buyer . . . ."). Nor did any of

ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT - 6

the parties' writings or negotiations grant it the right to inspect or reject the goods. In fact, the letter of credit specified that Kroger could reject the goods and the manner in which it could do so. Bagga Decl., Ex. A. The lack of a right to reject the goods further highlights the fact that Shah Safari was not the buyer of the goods.

Harman also argues that Shah Safari confirmed, in writing, that having the goods consolidated domestically did not affect the letter of credit. Bagga Decl., Ex. D. That confirmation strengthens Harman's position against Wells Fargo regarding the enforceability of the letter of credit but is irrelevant to the issue of whether Shah Safari is a buyer under the purchase contract. Nor has Harman asserted any alternate theories of recovery against Shah Safari that might make the letter relevant. In sum, there is no evidence that Shah Safari contracted to buy goods or that the parties agreed that its role encompassed being a buyer. Therefore, the Court denies plaintiff's motion for summary judgment.

Shah Safari argues that it is entitled to summary judgment in its favor because Harman has had a full opportunity to "ventilate" the issues but could not prevail on its breach of contract claim even if a trial were held. The Court may grant summary judgment to a non-moving party under those circumstances. See, e.g., Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir. 1982). In this case, there is no genuine issue as to any material fact. After Shah Safari requested summary judgment in its favor, Harman did not counter with any facts or theories in its reply to show that its claims should survive. Furthermore, through the briefing on this motion, Harman has had a full

opportunity to present its evidence and arguments.  Accordingly, the Court will grant summary judgment in defendant's favor.

### III.  CONCLUSION

For all of the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment (Dkt. #10).  The Court *sua sponte* grants summary judgment in defendant's favor.  The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 7th day of September, 2010.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT - 8